# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL C., | Case No.:  3:20-cv-256-MMA-RBM |
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE RE: PLAINTIFF'S MERITS BRIEF** |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **[Docs. 11, 12, 13]** |

## I.    <u>INTRODUCTION</u>

Plaintiff Russell C. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C §§ 405(g), 1383(c)(3) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") ("Defendant" or "Commissioner") denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("the Act"). (Doc. 1.)

Before the Court are: (1) Plaintiff's Motion for Summary Judgment,[1] seeking reversal and remand for an award of benefits (Doc. 11); Defendant's Opposition to

---

[1] As set forth in the briefing schedule (Doc. 10), the undersigned ordered Plaintiff to file a merits brief pursuant to Civil Local Rule 7.1(e)(6)(e).  Plaintiff, however, titled the brief "Memorandum of Points and Authorities in Support of a Motion for Summary Judgment" and inappropriately cited Federal Rule of

1

Plaintiff's Motion for Summary Judgment (Doc. 12); and Plaintiff's Reply to Defendant's Opposition (Doc. 13).

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c). Considering the papers, the Administrative Record ("AR"), the facts, and the applicable law, it is respectfully recommended that Plaintiff's Merits Brief be **GRANTED IN PART** and **DENIED IN PART** and the Administrative Law Judge's ("ALJ") decision be **REMANDED**.

## II.    BACKGROUND & PROCEDURAL HISTORY

In May 2016, Plaintiff filed concurrent applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, respectively. (AR at 15, 76, 106-121.[2]) As to the Title XVI application for SSI, the Commissioner approved the application on August 24, 2016, found Plaintiff disabled as of May 3, 2016, and assessed a light residual functional capacity ("RFC"). (*Id.* at 15, 106-122.) As to the Title II application for DIB, the ALJ found Plaintiff not disabled, and assessed an RFC consistent with unskilled medium work. (*Id.* at 22-31.)

This case only concerns the denial of DIB. The parties dispute whether the doctrine of collateral estoppel barred the Administrative Law Judge ("ALJ") from assessing an RFC different from the Title XVI application. At the center of the dispute is Plaintiff's eleven-month work history at Interfaith Community Services, Inc. ("Interfaith"), which began merely two months after filing these applications and continued during the pendency of these applications. (*Id.* at 15, 200, 283-284.) Plaintiff worked at Interfaith from July 13, 2016 until June 2017. (*Id.*) According to Plaintiff, Interfaith is a non-profit organization that provides housing assistance and other services for homeless individuals and

---

Civil Procedure 56 (i.e., summary judgment). (Doc. 11.) Hereafter, Plaintiff's brief will be referred to as a Merits Brief.

[2] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page numbers assigned by CM/ECF.

1   individuals with disabilities.  (Doc. 11 at 7.)  Plaintiff worked as an intake clerk which is
2   classified as a light job.  (AR at 29.)

3       As to the Title II application, Plaintiff alleges disability due to post-traumatic stress
4   disorder ("PTSD"), depression, anxiety, post-bypass surgery, pain in the leg and abdomen,
5   problems with concentration, focus, and memory, and an inability to stretch or bend post-
6   surgery.  (AR at 78.)  Plaintiff alleged September 1, 2011 as the onset date of disability.
7   (*Id.* at 15, 78.)  The claim was denied initially on July 29, 2016, and upon reconsideration
8   on November 8, 2016.  (*Id.* at 15, 76-98.)  At the initial and reconsideration levels,
9   Plaintiff's date last insured was June 30, 2013.  (*Id.* at 77, 90.)  The Commissioner denied
10  the DIB application at these levels based upon insufficient evidence of disability from the
11  September 1, 2011 onset date through the June 30, 2013 date last insured.  (*Id.* at 82, 93.)

12      On December 14, 2016—during the time when Plaintiff worked at Interfaith—
13  Plaintiff requested a hearing before an ALJ.  (*Id.* at 128-129.)  At the June 20, 2018 hearing,
14  Plaintiff appeared with counsel.  (*Id.* at 15, 36-39.)  The ALJ elicited testimony from
15  Plaintiff and Bassey A. Duke, a vocational expert ("VE").  (*Id.* at 67-74.)  On November
16  16, 2018, the ALJ issued a written decision finding Plaintiff was not disabled as defined in
17  the Act.  (*Id.* at 31.)  The ALJ did not adopt the findings and light RFC assessment in the
18  favorable Title XVI application due to Plaintiff's work history at Interfaith since the onset
19  date.  (*Id.* at 16.)  On January 19, 2019, Plaintiff sought review of the decision by the
20  Appeals Council.  (*Id.* at 7-11.)  On December 11, 2019, the Appeals Council denied review
21  of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner
22  pursuant to 42 U.S.C. § 405(h).  (*Id.* at 1-6.)

23              **III.   THE ALJ'S FINDINGS**

24      In the decision, the ALJ determined Plaintiff met the insured status requirements of
25  the Act through December 31, 2018, which was extended due to Plaintiff's work at
26  Interfaith.  (AR at 15, 17-18.)  The ALJ then followed the five-step sequential evaluation
27  process to determine whether Plaintiff is disabled.  *See* 20 C.F.R. § 404.1520(a).
28  / / /

3

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity during the following periods: July 13, 2016 through June 30, 2017. (AR at 18, 282-289 (citing 20 C.F.R. §§ 404.1520(b), 404.1571).) However, the ALJ also found there had been continuous twelve-month periods during which Plaintiff did not engage in substantial gainful activity, and the ALJ's remaining findings addressed the periods where Plaintiff did not engage in substantial gainful activity. (AR at 19.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments: history of coronary artery disease/ischemic heart disease status post myocardial infarction with coronary artery bypass grade with residual dyspnea/fatigue/bradycardia; and mental conditions variously diagnosed to include generalized anxiety disorder, PTSD from military sexual trauma, and depression/depressive disorder not otherwise specified. (*Id.*) The ALJ found Plaintiff's diabetes, hyperlipidemia, hypertension, history of abdominal sarcoma status post-resection and radiation, and degenerative changes of the lumbar spine as non-severe. (*Id.*) Likewise, the ALJ found Plaintiff's leg pain did not constitute a medically determinable impairment, as there was no objective medical signs or laboratory findings to substantiate the existence of such impairment. (*Id.*)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) As to Plaintiff's mental impairments, the ALJ found mild limitations in understanding, remembering, or applying information; mild limitations in adapting and managing oneself; moderate limitations in interacting with others; and moderate limitations in concentrating, persisting, or maintaining pace. (*Id.*)

Next, the ALJ determined Plaintiff has RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), including frequently lifting 50 pounds, except Plaintiff has the capacity to:

[s]tand and/or walk 6 hours in an 8-hour day. He can sit 6 hours in an 8-hour day. He may frequently climb ramps and stairs, and stoop, kneel, crouch and crawl. He may occasionally climb ladders, ropes and scaffolds. He must avoid more than occasional exposure to extreme cold and heat. He can learn, remember and perform simple, routine

and repetitive work tasks, which are performed in a routine, predictable, and low stress work environment (defined as one in which there are no rapid production pace work tasks or high quota requirements, few work place changes, and no close personal supervision). He may attend and concentrate for 2 hours at a time with normal breaks. He may have occasional contact with supervisors. He may have occasional and superficial contact with coworkers. He should have no contact with the public.

(AR at 19.) For purposes of the step four analysis, the ALJ gave "minimal weight" to Veterans Affairs ("VA") opinion statements in the record on the basis that the statements were "largely unsupported and overall inconsistent with the longitudinal evidence, including the [VA] records themselves." (*Id.* at 27 (citing 7F at 596).) This included a VA opinion statement from staff psychiatrist George Kevin Flood, who found Plaintiff experienced "severe PTSD" due to being physically and emotionally assaulted while in the military. (AR at 592-596.) Dr. Flood opined the trauma Plaintiff experienced in the military "rendered him unable to work. He is completely and permanently disabled." (*Id.* at 596.) This also included VA opinion statements indicating Plaintiff had "poor functional capacity," decreased exertional capacity and included a 10-pound weight lifting restriction. (*Id.* at 27 (citing 7F at 517, 527-528, 555, 627).)

Additionally, State agency medical opinion statements were generated in connection with Plaintiff's Title XVI application. State agency mental consultant Helen Patterson, Ph.D., reviewed Plaintiff's medical records on July 8, 2016 at the initial level. (AR at 77-88.) Dr. Patterson found Plaintiff capable of maintaining "adequate attention, concentration, persistence and pace" to sustain a normal workday and workweek. (*Id.* at 86.) Dr. Patterson found Plaintiff moderately limited in his ability to interact appropriately with the general public and in his ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.* at 87.) Dr. Patterson also found Plaintiff had the ability to understand and remember short and simple instructions. (*Id.* at 86.) At the reconsideration level on November 8, 2016, H. Amado, M.D., conducted a psychiatric review and found insufficient evidence of mental disability through Plaintiff's June 2013 date last insured for purposes of the Title II application. (AR at 94-95.) Additionally, H.

1   Arora, M.D., reviewed Plaintiff's medical records at the initial level on July 8, 2016, and
2   assessed a light RFC. (AR at 84-86); *see also* 20 C.F.R. §§ 404.1567, 416.967. Dr. Arora
3   opined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or
4   walk for about 6 hours in an 8-hour day, and sit for about 6 hours in an 8-hour day. (AR
5   at 84.) However, Dr. Arora found insufficient medical evidence to support a finding of
6   disability prior to the June 2013 date last insured for purposes of the Title II application.
7   (*Id.* at 81-82.) At the reconsideration level, Joel Ross, M.D. affirmed Dr. Arora's finding.
8   (*Id.* at 94-96.) The ALJ afforded no weight to the foregoing State agency opinions because
9   they explicitly stated that the RFC and mental RFC sections pertained only to the Title XVI
10  application. (*Id.* at 16 (citing Ex. 2A at 77-88, Ex. 4A at 90-98).)

11          The ALJ gave "minimal weight" to Plaintiff's scores such as the PCLC, PHQ-9, and
12  *Global Assessment of Functioning* (GAF) on the basis that the "actual scores themselves
13  are largely subjectively assessed, and are more limited in evidentiary scope as compared
14  to the more broad based evidentiary longitudinal record." (*Id.* at 28.)

15          The ALJ also assigned "minimal weight" to the third-party statement of Plaintiff's
16  son, Nicholas Centera, as he found the probative value questionable because it was given
17  approximately one month before Plaintiff returned to work. (*Id.* at 29.)

18          Overall, the ALJ found the objective medical findings did not support the degree of
19  limitation alleged. The ALJ's step four analysis, however, determined Plaintiff does not
20  have the RFC to perform past relevant work, as the demands of Plaintiff's past work exceed
21  his RFC. (*Id.*) At step five, the ALJ found Plaintiff can perform jobs that exist in
22  significant numbers in the national economy considering Plaintiff's advanced age,
23  education through at least high school, work experience, and RFC. (*Id.* at 30.) These
24  medium unskilled jobs included hand packager, dish washer, and cleaner. (*Id.*) Therefore,
25  the ALJ found Plaintiff had not been under a disability, as defined in the Act, from
26  September 1, 2011 through the date of the decision. (*Id.* at 31.)

27  / / /

28  / / /

## IV.   ISSUES IN DISPUTE

As set forth in the parties' briefing, the disputed issues are as follows:

1.   Whether the ALJ erred in assessing an RFC different from the Title XVI claim, and thus, finding collateral estoppel inapplicable?

2.   Whether the ALJ's findings as to Plaintiff's work after the alleged onset date of disability is supported by substantial evidence?

3.   Whether the ALJ's RFC assessment is supported by substantial evidence?

## V.   STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "[F]ederal court review of social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold an ALJ's disability determination if it is free of legal error and is supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence is "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts" from the ALJ's conclusion. *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *E.g.*, *Garrison*, 759 F.3d at 1010 (internal citation omitted). When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when "the evidence can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (internal citation omitted). Rather, the Court only reviews the reasons provided by the ALJ and may not affirm the ALJ on other grounds. *Id.*

7

# VI.   **DISCUSSION**

Plaintiff contends the ALJ's decision is based on legal error for failure to apply collateral estoppel to the RFC issue in Plaintiff's Title II application for DIB. (Doc. 11 at 10-13.)  Additionally, Plaintiff contends the ALJ's decision is not supported by substantial evidence on two grounds: (1) the ALJ failed to evaluate Plaintiff's work activity after the alleged onset date of disability under the guidelines set forth in the Commissioner's regulations; and (2) the ALJ's RFC assessment is supported by neither the opinions of state agency physicians nor VA opinion statements, both of which were available in the administrative record.  (Doc. 11 at 13-20.)  Defendant counters that the ALJ's decision should be affirmed because collateral estoppel does not apply to concurrent applications for DIB and SSI, and, in any event, the DIB claim covers a different period of disability from the SSI claim due to Plaintiff's post-onset work activity.  (Doc. 12 at 8-11.)  Further, Defendant contends the ALJ properly assessed Plaintiff's post-onset work activity and the ALJ's RFC finding is supported by substantial evidence.  (*Id.* at 12-20.)

## A.   **Collateral Estoppel Does Not Apply to Plaintiff's Application for DIB**

On May 3, 2016, Plaintiff filed concurrent applications for DIB and SSI alleging an onset of disability beginning September 1, 2011.   (AR at 15, 76, 106-121.)   The Commissioner approved the SSI application on August 24, 2016, finding Plaintiff disabled as of May 3, 2016, and assessed a light residual RFC.[3]  (*Id.* at 15, 106-121.)  As to the instant DIB claim, the Commissioner denied the applications at the initial and reconsideration levels based upon insufficient evidence of disability from the September 1, 2011 onset date through the prior June 30, 2013 date last insured.  (*Id.* at 82, 93.)  The ALJ found collateral estoppel inapplicable to the DIB claim because he found reasons to

---

[3] As indicated in Plaintiff's brief, the Medical-Vocational Guidelines take into account a claimant's RFC, age, education, and skill level of past work.  (Doc. 11 at 11 n. 2 (citing 20 C.F.R. App'x 2 to Supt. P of Pt. 404).)  Within a light RFC, Medical-Vocational Rule 202.06 directs a finding of "disabled" where a claimant is 55 years old or older with skilled or semi-skilled past work with no transferrable skills.  Thus, the Medical-Vocational Rules allow for a claimant to retain capacity for either light or sedentary work and still be considered disabled.  (*Id.*)

1  believe the Title XVI determination was wrong. (AR at 16.) Specifically, the findings and

2  light RFC assessment in the Title XVI application were not adopted due to Plaintiff's

3  subsequent "substantial gainful activity" at Interfaith. (*Id.*)

4      The Commissioner's regulation addressing collateral estoppel states:

5      [a]n issue at your hearing may be a fact that has already been decided in one of our
       *previous determinations or decisions* in a claim involving the same parties, but
6      arising under a different title of the Act . . . If this happens, the administrative law
7      judge will not consider the issue again, but will accept the factual finding made in
       the previous determination or decision *unless there are reasons to believe that it was*
8      *wrong.*

9

10  20 C.F.R. § 404.950(f) (emphasis added). Neither party cites any regulation, statute, or

11  caselaw that addresses how *concurrent* applications for DIB and SSI are treated in relation

12  to collateral estoppel. Instead, Plaintiff relies upon the plain language of 20 C.F.R. §

13  404.950(f), contending that the SSI finding is a "previous determination or decision" that

14  makes the RFC determination in the DIB claim subject to collateral estoppel. (Doc. 11 at

15  12-13.) Plaintiff cites *Hoffman v. Colvin*, however, this case involved the collateral

16  estoppel effect of a 1997 SSI decision to a *subsequent* Title II application filed in 2004 and

17  thus does not concern the issue of concurrent applications for DIB and SSI. *Hoffman*, No.

18  11-cv-2338-EFB, 2014 WL 2892695, * 1 (E.D. Cal. June 25, 2014). On the other hand,

19  Defendant contends "the doctrine of collateral estoppel would not mandate adopting a prior

20  determination here, as simply put, there was no new claim and no earlier determination to

21  adopt." (Doc. 12 at 9.) Defendant also contends that collateral estoppel only applies to

22  claims concerning the "same period," and here, the SSI and DIB periods are different. (*Id.*

23  at 10.) That is, the SSI claim found Plaintiff disabled as of May 2016, whereas, the period

24  for Plaintiff's DIB covered September 2011 through November 16, 2018. (Doc. 12 at 10);

25  *see also* (AR at 2).

26      Notably, the ALJ found collateral estoppel did not "exactly apply to [Plaintiff's]

27  current Title II application . . . because [Plaintiff] originally filed a concurrent Title II and

28  Title XVI disability application as opposed to a 'new' Title II application." (AR at 15

1  (citing POMS DI 11011.001 (stating, "[t]he Disability Determination Services (DDS) may

2  adopt, in a new claim, the findings of a prior favorable determination or decision.").)

3  However, the ALJ found "the underlying principles of the doctrine" as a "useful framework

4  as toward the treatment of . . . [Plaintiff's] current Title II application on appeal." (*Id.* at

5  16.)

6          When applying for either SSI or DIB, the claimant must establish that he is disabled.

7  "Both statutes define 'disability' as the 'inability to engage in any substantial gainful

8  activity . . . .'" *Bowen v. City of New York*, 476 U.S. 467, 470 (1986) (citing 42 U.S.C. §§

9  423(d)(1)(A), 1382c(a)(3)(A)).  In situations with concurrent applications for SSI and DIB,

10  courts have addressed the issue of disability in terms of meeting a single disability standard.

11  *See Davis v. Heckler*, 748 F.2d 293, 294 n.2 (5th Cir. 1984) (in determining disability, the

12  two claims are treated together because "the relevant law and regulations governing a claim

13  for disability benefits are identical to those governing a claim for supplemental income

14  benefits . . ."); *Kapusta v. Sullivan*, 900 F.2d 94, 95 n.5 (7th Cir. 1989) (per curiam) ("[t]he

15  standards for disability benefits and [SSI] are identical, so we treat . . . [the claimant's]

16  applications as one.").  Given that concurrent SSI and DIB applications are treated as one

17  application for purposes of determining disability, Plaintiff's argument that the SSI

18  decision is a "previous determination or decision" that warrants application of collateral

19  estoppel to the DIB claim, is unavailing. *Kapusta*, 900 F.2d at 95 n.5; *Davis*, 748 F.2d at

20  294 n.2.

21          Although the requirements for determining disability are identical for both DIB and

22  SSI, the requirements for *eligibility* differ. *White v. Bowen*, 835 F.2d 974, 975-976 (2nd

23  Cir. 1987).  Qualification for SSI under Title XVI has no insured status requirements, but

24  instead pays benefits based upon economic need. *White*, 835 F.2d at 975.  To qualify for

25  DIB under Title II, the claimant's disability must manifest on or before the date of

26  eligibility expires (i.e., the date last insured). *Arnone v. Bowen*, 882 F.2d 34, 38 (2nd Cir.

27  1989); *Perez v. Shalala*, No. 93-civ-7262(JFK), 1995 WL 367092, at *1 (S.D.N.Y. Apr. 7,

28  1995).  Which is why Plaintiff's DIB claim here was denied at the initial and

reconsideration levels: the Commissioner found insufficient evidence of disability from the onset date through the prior June 2013 date last insured. (AR at 82, 93.) The ALJ then found Plaintiff had engaged in substantial gainful activity since the established onset date, which gave him reason to believe "the prior favorable Title XVI determination was wrong." (*Id.* at 16.)

Even assuming *arguendo* that the SSI decision is a "prior determination or decision," the ALJ explained why the SSI decision was wrong: Plaintiff's post-onset work activity at Interfaith constituted substantial gainful activity. (AR at 15-16); *see also* 20 C.F.R. § 404.950(f). The ALJ also noted that Plaintiff failed to report his work at Interfaith in disability appeals reports and Plaintiff admitted to mistakenly accepting both employment income and Title XVI disability payments, which resulted in Title XVI disability overpayments. (*Id.* at 16 (citing 6E at 266, 8E at 276)); *see also* (AR at 44-45 (Plaintiff's hearing testimony discussing Title XVI overpayment issue)).

While Plaintiff contends the ALJ should be estopped from redetermining the RFC because he failed to cite any "good cause" for reopening the SSI determination, Plaintiff cites no evidence that the ALJ actually or implicitly reopened the SSI decision. (Doc. 11 at 10); *see* 20 C.F.R. §§ 416.1487-416.1494 (discussing procedures and conditions for reopening).

Considering the concurrent applications for DIB and SSI, Plaintiff's subsequent substantial gainful activity as addressed *infra*, and the ALJ's cited reasons as to why he believed the SSI determination was wrong, the undersigned finds no error in the ALJ's finding that collateral estoppel does not apply to the Title II application. *See infa* pp. 11-13.

**B.     The ALJ's Findings as to Plaintiff's Post-Onset Work Activity is Supported by Substantial Evidence**

Plaintiff contends the ALJ's finding that Plaintiff's post-onset work activity constitutes "substantial gainful activity" lacks substantial evidence because he failed to properly analyze the Commissioner's regulatory factors. (Doc. 11 at 13-16 (citing 20

11

C.F.R. §§ 404.1573, 1574).)   Defendant counters that the ALJ properly considered Plaintiff's earnings and found no evidence of work accommodations, subsidies, or impairment-related work expenses which would indicate a sheltered work environment. (Doc. 12 at 8.)   Thus, Defendant contends the ALJ properly found Plaintiff's post-onset work was substantial gainful activity.

In considering whether a claimant engaged in substantial gainful activity, the Commissioner must consider all of the medical and vocational evidence in the file. *See* 20 C.F.R. § 404.1571.   The primary consideration for evaluating substantial gainful activity is employment earnings. *See* 20 C.F.R. § 404.1574(a)(1).   Social Security sets limits on countable earnings before it is considered substantial gainful activity.   The 2016 substantial gainful activity limit was $1,130 and in 2017, it was $1,170. *See* POMS DI 10501.015(B). In addition to earnings, the Commissioner considers the nature of work, performance, whether work is done under special conditions, and time spent in work. *See* 20 C.F.R. § 404.1573.   If work is done under special conditions, it may be indicative of a sheltered workplace. *Id.*   These special conditions include: receiving special assistance from other employees in performing work; allowing irregular work hours or frequent rest periods; being provided special equipment or assigned work especially suited to an impairment; being permitted to work at a lower standard of productivity or efficiency; or being given an opportunity to work despite an impairment due to a special relationship with the employer. *Id.*

Here, there is no dispute Plaintiff's earnings from his employment at Interfaith exceeded substantial gainful activity earnings limits.   (AR at 284.)   Plaintiff suggests that his earnings may have been subsidized because his $14 hourly wage exceeded the $10.50 minimum wage in 2016.   (Doc. 11 at 15.)   However, this $3.50 wage discrepancy is not a basis to find any error in the ALJ's decision, as it offers no comparison of wages for similar work done by unimpaired persons. *See* 20 C.F.R. § 404.1574(a)(2).   Contrary to Plaintiff's assertion that the ALJ simply concluded Plaintiff "engaged in substantial gainful activity since the established onset date," the ALJ examined Plaintiff's self-reported work activity

12

report and found no evidence of any "work accommodations, subsidies, or impairment-related work expenses." (AR at 19 (citing 11E at 282-289).) To the extent Plaintiff contends the ALJ should have developed the record further on the issue of whether Plaintiff could sustain working at substantial gainful activity levels, this argument fails. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (stating, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). While Plaintiff only worked at Interfaith for eleven months, the ALJ carefully examined the record and opined that Plaintiff remained without full-time employment for reasons entirely unrelated to any claimed functional inability. (AR at 25.) For instance, on several occasions Plaintiff did not express interest in work therapy programs, supported employment or vocational assistance and other evidence confirmed Plaintiff did not look for assistance with reintegration into the workforce because he had been selling things online for several years. (*Id.* at 25-26.) Moreover, the ALJ cited to other evidence in the record indicating that Plaintiff was more capable than alleged. This included Plaintiff's ability to work part-time performing janitorial duties and Plaintiff's part-time work for Ace Parking. (*Id.* at 26 (citing Ex. 7F at 549, 648); *see also* AR at 52-54.) When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *E.g.*, *Garrison*, 759 F.3d at 1010 (internal citation omitted); *see also Batson*, 359 F.3d at 1193.

Considering the foregoing, the ALJ's finding that Plaintiff's work at Interfaith constituted substantial gainful activity is supported by substantial evidence.

## C. The ALJ's RFC Assessment is Not Supported by Substantial Evidence

Plaintiff broadly challenges the ALJ's RFC assessment finding Plaintiff capable of medium work, chiefly arguing that it is not supported by any medical opinion. (Doc. 11 at 17-20.) Plaintiff claims the ALJ formulated his own independent determination to find Plaintiff capable of medium work. (*Id.* at 18.) Defendant contends that the RFC assessment need not track a medical opinion, and here, the ALJ thoroughly evaluated the

13

1  medical evidence such that his RFC assessment is supported by substantial evidence. (Doc.
2  12 at 16-20.)
3      An RFC assessment is the most a plaintiff can do despite their limitations, and this
4  assessment is based upon all relevant evidence in the record including medical records,
5  medical source statements, and symptom testimony. *See* 20 C.F.R. § 404.1545(a)(1); SSR
6  96-8p; *see also Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (Social Security
7  Rules are binding on ALJs); *see also Shafer v. Barnhart*, 120 Fed. App'x 688, 697 (9th
8  Cir. 2005); *Robbins v. Soc. Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).   The
9  responsibility for making this assessment is within the purview of the administrative law
10  judge. *See* 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th
11  Cir. 2001) (citing 20 C.F.R. § 404.1545).  "SSR 96-8p provides a blueprint for what an
12  RFC assessment must contain in all cases in which symptoms are alleged:  (1) a thorough
13  discussion and analysis of the objective medical and other evidence . . . ; (2) a resolution
14  of any inconsistence in the evidence as a whole; and (3) a logical explanation of the effects
15  of symptoms . . . on the individual's ability to work." *Shafer*, 120 Fed. App'x at 698.
16      Further, where there is a treating physician assessment of limitations, the ALJ must
17  either incorporate the treating physician's opinion or give specific and legitimate reasons
18  for either rejecting it or assigning it "little weight." *Martin v. Comm'r of Soc. Security*
19  *Admin.*, 472 Fed. App'x 580 (9th Cir. 2012); *see also Burns v. Berryhill*, 731 Fed. App'x
20  609, 612 (9th Cir. 2018).   Similarly, with respect any opinions of a medical expert or
21  examining physician, the ALJ should provide specific and legitimate reasons for rejecting
22  such opinions. *Murphy v. Comm'r of Soc. Security Admin.*, 423 Fed. App'x 703, 705 (9th
23  Cir. 2011).
24      Where the "record contains conflicting medical evidence, the ALJ is charged with
25  determining credibility and resolving conflicts." *Benton v. Barnhart*, 331 F.3d 1030, 1040
26  (9th Cir. 2003).  But when there is ambiguous evidence or when the record is inadequate
27  to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record.
28  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (internal citation and quotation

1   omitted).  This duty exists irrespective of whether the claimant is represented by counsel.

2   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citation omitted).

3          Here, the ALJ provided a detailed and thorough summary of the medical evidence

4   of record.  (AR at 22-29.)  While the ALJ cited various treatment records which provided

5   insight into Plaintiff's overall behavior and participation in group therapy sessions and

6   work therapy programs, the ALJ's RFC assessment did not rely upon any physician's

7   opinion to provide an opinion regarding limitations, mental or physical.  (AR at 22-29.)

8          As to the mental RFC, the ALJ found severe mental impairments at step two of the

9   sequential  evaluation  process  (i.e.,  generalized  anxiety  disorder,  PTSD,  and

10  depression/depressive disorder).  (AR at 19.)  As set forth in 20 C.F.R. § 404.1520(c), an

11  impairment is severe only if it significantly limits the claimant's physical or mental ability

12  to do basic work activities.  "By definition, basic work activities are the abilities and

13  aptitudes necessary to do most jobs" which includes "understanding, carrying out, and

14  remembering  simple  instructions;  use  of  judgment,  responding  appropriately  to

15  supervision, coworkers, and usual work situations; and dealing with changes in a routine

16  work setting."  *See* SSR 85-28.  Despite Plaintiff's severe mental impairments, the ALJ

17  cites no medical opinion that concluded Plaintiff is capable of "simple, routine, and

18  repetitive work tasks" or that Plaintiff's mental health is such that he can "attend and

19  concentrate for 2 hours at a time with normal breaks."  (AR at 22-29.)  Instead, the ALJ

20  made an independent evaluation of Plaintiff's functional limitations despite VA opinion

21  statements which opined Plaintiff had "poor functional capacity" and Plaintiff's PTSD

22  "rendered him unable to work."  (*Id.* at 27 (citing 7F at 517, 596).)  While Defendant cites

23  to Dr. Patterson's assessment of Plaintiff's functional abilities, the ALJ afforded no weight

24  to this opinion because it concerned the Title XVI application only.  (Doc. 12 at 19-20);

25  *see also* (AR at 16); *see Garrison*, 759 F.3d at 1010 (the court only reviews the reasons

26  provided by the ALJ and may not affirm the ALJ on other grounds).  In any event, Dr.

27  Patterson did not review the 200 supplemental medical records from the VA which post-

28

1    dated her 2016 opinion and which provided insight into Plaintiff's functioning up through
2    the December 31, 2018 date last insured.  (AR at 466-699.)

3        The same is true for Plaintiff's physical RFC.  Without citing to any medical opinion
4    as to Plaintiff's exertional capacity to lift weight, the ALJ opined that Plaintiff can "lift,
5    carry, push and pull up to 50 pounds occasionally and 25 pounds frequently."  (*Id.* at 22.)
6    This is contrary to VA opinion statements indicating Plaintiff had decreased exertional
7    capacity and which recommended a 10-pound weight lifting restriction.  (*Id.* at 27 (citing
8    7F at 555, 627).)  This is also contrary to the State agency opinions generated for purposes
9    of the Title XVI application, which found Plaintiff could occasionally lift 20 pounds and
10   frequently lift 10 pounds.  (*Id.* at 84.)  Instead, the ALJ apparently made the exertional
11   capacity conclusion from medical evidence indicating Plaintiff had 5 out of 5 strength in
12   the bilateral lower and upper extremities.  (*Id.* at 27 (citing 4F at 367).)  At a minimum, the
13   VA opinion statements and State agency opinion as to Plaintiff's strength created an
14   ambiguity in the record that required further inquiry.  *McLeod*, 640 F.3d at 885.

15       Although consultative examinations are discretionary, the Court finds that the ALJ's
16   failure to follow up with Plaintiff's VA providers or order a consultative examination in
17   this instance violated the ALJ's special duty to fully and fairly develop the record.  *McLeod*,
18   640 F.3d at 885.  Consequently, the ALJ's RFC assessment is not supported by substantial
19   evidence.  *See Molina v. Berryhill*, 2018 WL 6421287, at *4 (E.D. Cal. Dec. 6, 2018)
20   (holding the ALJ's RFC determination not supported by substantial evidence when ALJ
21   made her own evaluation of the functional limitations caused by the claimant's diagnosed
22   impairments without developing the record through a consultative examination); *Rivera v.*
23   *Berryhill*, 2017 WL 5054656, at **4-5 (C.D. Cal. Oct. 31, 2017) (holding that ALJ's RFC
24   determination was not supported by substantial evidence where the treatment records did
25   not provide sufficient indications of the claimant's functional limitations and the few
26   findings that could translate to functional limitations were ambiguous); *Wheat v. Berryhill*,
27   No. 17-cv-2496-MMA-RNB, 2018 WL 3870055, at *3 (S.D. Cal. Aug. 14, 2018), *report*
28   *and recommendation adopted*, No. 17-cv-2496-MMA-RNB, 2018 WL 4328219 (S.D. Cal.

16

1   Sept. 11, 2018) (remanding on the basis that "the ALJ's statement that the mental status
2   examinations in evidence show primarily 'mild to moderate' findings is the ALJ's own
3   interpretation of the findings"); *Freda G. v. Saul*, No. 18-cv-694-AFM, 2019 WL 2568398,
4   at *4 (C.D. Cal. June 20, 2019) (remanding where ALJ determined an RFC in the absence
5   of a medical opinion regarding plaintiff's functional limitations).

6         In the absence of a medical opinion interpreting the extent of the limitations caused
7   by Plaintiff's severe impairments, the undersigned finds the ALJ's decision is not
8   supported by substantial evidence.

9         **D.**    **Remand is Appropriate**

10         The Court may remand for benefits "where no useful purpose [is] served by further
11   administrative proceedings and the record [is] thoroughly developed." *Vertigan*, 260 F.3d
12   at 1053 (internal quotations omitted).  In deciding whether to remand for benefits or for
13   further proceedings, the Court follows the three-step credit-as-true rule. *See Treichler*, 775
14   F.3d at 1100-02.  First, the Court determines if the ALJ failed to offer "legally sufficient
15   reasons for rejecting evidence." *Id.* at 1100.  Next, the Court determines whether the record
16   is fully developed, whether there are outstanding issues to be resolved before determining
17   disability, and whether further administrative proceedings would be useful. *Id.*  Finally, if
18   there are no outstanding issues, the Court may find "the relevant testimony credible as a
19   matter of law" and award benefits, so long as the record "leaves not the slightest uncertainty
20   as to the outcome of the proceeding." *Id.* at 1101.

21         Here, the undersigned finds that the record has not been fully developed with respect
22   to Plaintiff's RFC.  As such, remand is the appropriate remedy.

23         **VII.**   **CONCLUSION**

24         For the reasons given, the undersigned respectfully recommends: (1) Plaintiff's
25   Merits Brief be **GRANTED IN PART** and **DENIED IN PART**; and (2) the ALJ's
26   decision be **REMANDED**.

27         This Report and Recommendation is submitted to the United States District Judge
28   assigned to this case, under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure

1  72(b).  Any party may file written objections with the Court and serve a copy on all parties
2  on or before **January 28, 2021**.  The document should be captioned "Objections to Report
3  and Recommendation."  Any reply to the Objections shall be served and filed on or before
4  **February 11, 2021**.   The parties are advised that failure to file objections within the
5  specific time may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*,
6  951 F.2d 1153 (9th Cir. 1991).
7          **IT IS SO ORDERED**.
8  DATE: January 14, 2020

                                        HON. RUTH BERMUDEZ MONTENEGRO
                                        UNITED STATES MAGISTRATE JUDGE

20-cv-256-MMA-RBM